UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                                        :
   UNITED STATES OF AMERICA,                            :
                                                        :
                                                        :        16 Cr. 763-07 (LGS)
                    -against-                           :
                                                        :        **ORDER**
   HATEM BEHIRY,                                        :
                                       Defendant.       :
--------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

WHEREAS, on May 9, 2019, after a six-week jury trial, Defendant Hatem Behiry was

convicted of conspiracy to commit health care fraud, mail fraud and wire fraud; conspiracy to

make false statements relating to health care matters; and the substantive crimes of health care

fraud, mail fraud and wire fraud.

WHEREAS after being granted a one-week extension, Defendant Behiry did not file

post-trial motions by the May 30, 2019, deadline.

WHEREAS, on December 5, 2019, Defendant Behiry filed a second request to adjourn

sentencing.  In this letter, Defendant Behiry revealed that he was contemplating making post-trial

motions pursuant to Federal Rules of Criminal Procedure 29 and 33.

WHEREAS, on December 17, 2019, Defendant Behiry's sentencing was adjourned to

March 24, 2020.

WHEREAS, on January 6, 2020, Defendant Behiry withdrew his intent to file a Rule 29

motion and requested an extension to file his Rule 33 motion, which was denied on January 9,

2020.

WHEREAS, on January 24, 2020, Defendant Behiry filed his Rule 33 motion.  The

Government filed its opposition on February 6, 2020.  Defendant Behiry did not file a reply.

WHEREAS, in his Rule 33 motion, Defendant Behiry states that a week after his trial, he contacted Dr. Hesham Hegazy, a physical therapist who worked with Defendant Behiry at the Sunlight Medical clinic ("the clinic").  According to Defendant Behiry, he wanted to inform Dr. Hegazy about the guilty verdict and ask Dr. Hegazy why he had "refused to review trial evidence with [Defendant] Behiry."  Because Dr. Hegazy was "[s]till fearful of criminally implicating himself," he did not respond.  Eventually, through the efforts of mutual friends, Dr. Hegazy agreed to sit down with Defendant Behiry and "tell [Defendant Behiry] what he knew."  According to Defendant Behiry, over the next few months, the two men had "repeated conversations and meetings," focusing on video footage ("the video footage") of the initial medical evaluation of Boris Levin on February 24, 2012 ("the initial evaluation").  Mr. Levin had gone undercover at the clinic for the Federal Bureau of Investigation (the "FBI"), and the Government had relied on the video footage as evidence at trial.  According to Defendant Behiry, after providing Dr. Hegazy with notes from the Government's debrief with Mr. Levin after the initial evaluation, "Dr. Hegazy was able to recall the visit in detail" and "was absolutely certain that *he*," not Defendant Behiry, had conducted the examination depicted in the video and "had [previously] disclosed this to the Government during his [pre-trial] [interviews]." (emphasis added).

WHEREAS, in an affidavit submitted in support of Defendant Behiry's motion, Dr. Hegazy states that, at some point prior to trial, "[t]he FBI [interviewed] me about a video recorded at the subject clinic" on two different occasions, for approximately six to eight hours in total.  According to Dr. Hegazy, he was not presented with anything other than the video footage during these interviews and was able only to give "initial thoughts as to the procedure [he] observed on the screen," due to a lack of preparation and "the immense pressure" of the

situation.  Dr. Hegazy states that, after asking the Government if there were accompanying notes,

he was told "that there was no documentation of the evaluations on this day."  Later, with the

notes provided by Defendant Behiry, Dr. Hegazy states that "[his] recollection was refreshed,

and [he] was able to put together a more cohesive explanation of the evaluation depicted [in the

video]."  Dr. Hegazy states that he "can confirm that [he] asked [Mr. Levin] the primary

questions to evaluate his condition" and that he "then proceeded with the evaluation by

examining [Mr. Levin's] back and spine."

WHEREAS, relying on Dr. Hegazy's affidavit, Defendant Behiry argues that two of the

Government's witnesses during trial, Olga Kharuk and Anastasiia Flora, perjured themselves by

identifying both Defendant Behiry and Dr. Hegazy -- rather than just Dr. Hegazy -- in the video

footage during the initial evaluation.  With respect to Ms. Kharuk, Defendant Behiry argues that

she perjured herself by testifying to having identified both Defendant Behiry and Dr. Hegazy as

speakers in the footage.  According to Defendant Behiry, "[t]he voice or voices [in the video

footage] sound indistinguishable, even when the footage is viewed while wearing headphones

and at high volume as Ms. Kharuk did."  Defendant Behiry argues that Ms. Kharuk used her

testimony "to craft a narrative, among others, that [Defendant] Behiry and Dr. Hegazy

improperly collaborated to conduct deficient evaluations, and that [Defendant] Behiry's typical

practice was to conduct similarly deficient evaluations and then bill Medicare and Medicaid."

With the information in Dr. Hegazy's affidavit, Defendant Behiry argues that he would have

known Ms. Kharuk was lying and would have been able to impeach her testimony.

With respect to Ms. Flora, Defendant Behiry makes a similar argument, noting that "Ms.

Flora testified that she had watched the footage approximately three times . . . and heard both

[Defendant] Behiry and Dr. Hegazy ask Mr. Levin questions during [the initial evaluation]."  In

light of Dr. Hegazy's evidence, Defendant Behiry argues that this is "highly improbable."

Further, Defendant Behiry argues that Ms. Flora perjured herself by testifying "that Dr. Hegazy

is the [physical therapist] that reaches out to touch Mr. Levin's knee" and that "she never

observed [Defendant] Behiry touch patients in the two years that she worked at the clinic,"

therefore, according to Defendant Behiry, further "unduly influenc[ing] the jury to believe that

Defendant Behiry split consultations with other [physical therapists] at the clinic."  Relying on

Dr. Hegazy's affidavit, Defendant Behiry seeks a new trial under Rule 33 or, in the alternative, a

hearing on the materiality and relevance of the evidence.

WHEREAS Rule 33(b) permits what otherwise would be an untimely motion for a new

trial if that motion is based on newly discovered evidence.  Rule 33(a) states that "'[u]pon the

defendant's motion, the court may vacate any judgment and grant a new trial if the interest of

justice so requires.'"  *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013) (alteration in

original) (quoting Fed. R. Crim. P. 33(a)).  "In deciding a Rule 33 motion, the test is whether it

would be a manifest injustice to let the guilty verdict stand."  *James*, 712 F.3d at 107 (alteration

and quotation mark omitted); *accord United States v. Polk*, No. 17 Cr. 649, 2020 WL 906275, at

*2 (S.D.N.Y. Feb. 25, 2020).  District courts are directed to grant Rule 33 motions "sparingly"

and "[t]here must be a real concern that an innocent person may have been convicted."  *United

States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992); *accord Polk*, 2020 WL 906275, at *2.

Similarly, "motions for a new trial based on the identification of perjured testimony should be

granted only with great caution and in the most extraordinary circumstances."  *Sanchez*, 969 F.2d

at 1414; *accord Polk*, 2020 WL 906275, at *2.  To put forward a successful Rule 33 motion

based on newly discovered evidence of perjury, the defendant must, among other things, satisfy

two threshold requirements -- he must present newly discovered evidence and must prove that

"the witness in fact committed perjury." *United States v. Stewart,* 433 F.3d 273, 297 (2d Cir.

2006); *accord United States v. Walker*, 289 F. Supp. 3d 560, 565 (S.D.N.Y. 2018).  "Perjury in

and of itself is insufficient to justify relief under Rule 33." *Stewart*, 433 F.3d at 297; *accord*

*Polk*, 2020 WL 906275, at \*2.  A court may deny a Rule 33 motion without holding an

evidentiary hearing where it determines that the evidence "is not newly discovered as a matter of

law." *United States v. Forbes*, 790 F.3d 403, 411 (2d Cir. 2015); *accord United States v. Bout*,

144 F. Supp. 3d 477, 484 (S.D.N.Y. 2015), *aff'd*, 666 F. App'x 34 (2d Cir. 2016).  It is hereby

**ORDERED** that Defendant Behiry's Rule 33 motion for a new trial or an evidentiary

hearing based on newly discovered evidence is **DENIED**.  Defendant Behiry asserts that Dr.

Hegazy's affidavit is newly discovered evidence, which purportedly establishes that Ms. Kharuk

and Ms. Flora perjured themselves, primarily by testifying that both Defendant Behiry and Dr.

Hegazy asked Mr. Levin questions during the initial evaluation.  This argument is meritless for

multiple reasons.

First, the evidence contained in Dr. Hegazy's affidavit is not newly discovered.  The

Second Circuit has held that "evidence is excluded from the meaning of 'newly discovered'

under Rule 33 where (1) the defendant was aware of the evidence before or during trial, [and] (2)

there was a [legal] basis for the unavailability of the evidence at trial, such as the assertion of a

valid privilege." *Forbes*, 790 F.3d at 408; *accord United States v. Rosario*, No. 14 Cr. 603, 2017

WL 3841867, at \*8 (S.D.N.Y. Sept. 1, 2017); *see United States v. Owen*, 500 F.3d 83, 89-90 (2d

Cir. 2007) ("One does not 'discover' evidence after trial that one was *aware of* prior to trial.").

Defendant Behiry's motion is premised on the argument that he was not aware of the

information in Dr. Hegazy's affidavit before and during trial.  However, evidence cited by the

Government strongly suggests otherwise.  In its opposition motion, the Government cites a

discovery letter, provided to Defendant Behiry more than a month before trial, describing what

Dr. Hegazy told the Government during his two interviews.  The letter informed Defendant

Behiry that Dr. Hegazy told the FBI that the two men had met following Defendant Behiry's

indictment, watched the video footage and spoken about the initial evaluation.  Specifically, the

letter explained that Dr. Hegazy told the FBI that he "recognized his sweater and his own voice"

in the video footage and had doubts about why the evaluation was so short, stating "I must have

done more" and that he "must have seen the patient some other time."

This evidence belies the suggestion that Defendant Behiry was unaware of the

information in Dr. Hegazy's affidavit before trial.  The fact that Defendant Behiry repeatedly

asked Dr. Hegazy to testify and represented to the Court that he was thinking of calling Dr.

Hegazy as a witness further supports this point.  *See Pizzuti v. United States*, No. 02 Cr. 1237,

2014 WL 4636521, at *45 (S.D.N.Y. Sept. 16, 2014) (concluding that the evidence in question

was not newly discovered, where petitioners were aware that the individuals offering new

evidence "could have testified about the same facts they now purport to offer through

affidavits").  That Defendant Behiry was not aware of what exactly Dr. Hegazy would agree to

say in his affidavit does not render the evidence newly discovered.  *See Rosario*, 2017 WL

3841867, at *8 (concluding that defendant did not newly discover evidence from an immigration

application, where defendant did not know the application's exact contents but was previously

aware of its existence).

Further, Defendant Behiry repeatedly pursued the position that it was Dr. Hegazy, not he,

who conducted the initial evaluation, during his cross examination of four witnesses at trial,

including Ms. Kharuk and Ms. Flora.  On April 8, 2019, Defendant Behiry's trial counsel told

the Court: "[Defendant] Behiry is observed in the February 24 video, which the [G]overnment at

one point in time believed [Defendant] Behiry was conducting an evaluation; it turned out to be another physical therapist who was conducting the evaluation."  Even if the Court were to accept that Defendant Behiry "first learned" after trial that Dr. Hegazy could testify to the facts contained in his affidavit, this evidence would not be newly discovered, but rather "newly available" where, as here, Defendant Behiry knew or should have known of the alleged facts in the affidavit before or during trial.  *See United States v. Muja*, 365 F. App'x 245, 246 (2d Cir. 2010) (summary order) (concluding that an affidavit was not newly discovered where defendant was "plainly . . . aware (or should have been aware) that . . . he [defendant] did not know [the individual who submitted the post-trial affidavit] during the pendency of the charged conspiracy, thus demonstrating that the facts contained in [the affidavit] were not in any way newly discovered." (quotation marks omitted)).

With respect to the legal basis for the unavailability of the evidence at trial, while Dr. Hegazy did not formally invoke his Fifth Amendment rights, he refused Defendant Behiry's repeated requests for his testimony and strongly suggested that he would have invoked the Fifth Amendment had he been subpoenaed.  He states in his affidavit, "My lawyer also told me that he had already informed [Defendant] Behiry's lawyer that I would not appear for trial, even under the compulsion of a court-ordered subpoena."  This constitutes a sufficient legal basis for the unavailability of the evidence.  *See United States v. Bout*, 666 F. App'x 34, 38 (2d Cir. 2016) (summary order) (concluding that there was a legal basis for the unavailability of an unindicted potential witness who, according to a declaration upon which defendant relied for Rule 33 purposes, "did not testify because he did not want to incriminate himself" (citing *Forbes*, 790 F.3d at 408)); *see also Forbes*, 790 F.3d at 410 (affirming the application of *Owen* in the context of an alleged coconspirator).

7

Finally, even if Defendant Behiry could establish that Dr. Hegazy's affidavit was newly discovered, Defendant Behiry has not shown that Ms. Kharuk and Ms. Flora committed perjury. *See Polk*, 2020 WL 906275, at \*2 (noting that the threshold inquiry in this context is whether the testifying witness, in fact, committed perjury).  "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001) (citing *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)); *accord Rosario*, 2017 WL 3841867, at \*2.

First, Dr. Hegazy's affidavit states only that he "asked [Mr. Levin] the *primary* questions to evaluate his condition."  (emphasis added).  It does not state that Dr. Hegazy was the *only* physical therapist who asked Mr. Levin questions during the initial evaluation.  The affidavit therefore does not establish that either Ms. Kharuk and Ms. Flora perjured themselves, or got the facts wrong, where both testified that both Dr. Hegazy and Defendant Behiry asked Mr. Levin questions during the initial evaluation.  Further, neither Ms. Kharuk nor Ms. Flora was in the room during the initial evaluation and both were providing only opinions about who was speaking on the recording.  *See* Fed. R. Evid. 701 (permitting opinion testimony by lay witnesses).  Even if Ms. Kharuk and Ms. Flora were wrong about what they heard on the recording, the motion fails to establish their willful intent to provide false testimony, as compared to potentially incorrect opinions.  *See Monteleone*, 257 F.3d at 219 ("A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory."); *accord United States v. Aquart*, 912 F.3d 1, 20 (2d Cir. 2018).

Accordingly, Defendant Behiry's Rule 33 motion for a new trial or an evidentiary hearing based on newly discovered evidence is denied.  *See Bout*, 144 F. Supp. 3d at 484.[1]

      The Clerk of Court is respectfully directed to close the motion at Docket Number 739.

Dated: June 30, 2020
      New York, New York

                              **LORNA G. SCHOFIELD**
                         **UNITED STATES DISTRICT JUDGE**

---

[1] In addition, the evidence at trial of Defendant Behiry's involvement in the fraud was overwhelming, even without the consultation shown on the video, as detailed in the Government's Memorandum of Law.  (Dkt. No. 749 at 4-13, 29-31).